IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES of AMERICA, )<br>)<br>Plaintiff, and the )<br>)<br>State of Colorado, )<br>Plaintiff-Intervener,   and the )<br>)<br>State of Louisiana, )<br>Plaintiff-Intervener,   and the )<br>)<br>State of Oklahoma, )<br>Plaintiff-Intervener,   and the )<br>)<br>State of Montana, )<br>Plaintiff-Intervener, )<br>)<br>v. ) Civil Action<br>) No. H-01-4430<br>Conoco Inc. )<br>)<br>Defendant. )<br>_____ ) | UNITED STATES COURTS<br>SOUTHERN DISTRICT OF TEXAS<br>FILED<br><br>SEP 1 8 2006<br><br>MICHAEL N. MILBY, CLERK OF COURT |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
TO ENTER SECOND AMENDMENT TO CONSENT DECREE**

The United States, on behalf of the Environmental Protection Agency ("EPA"), moves for entry of the proposed Second Amendment to Consent Decree lodged with this Court on July 12, 2006, in the above-styled action. This is an environmental settlement with Conoco Inc., (now referred to as "ConocoPhillips"), to address claims under Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b) (1983), <u>amended by,</u> 42 U.S.C. § 7413(b) (Supp. 1991), at four refineries. This was one of the first settlements under EPA's enforcement initiative, targeting non-compliance in the petroleum refining industry.

The Court entered the original Consent Decree in this action on April 30, 2002. The Consent Decree was first amended on August 1, 2003, to reflect the sale of the Denver refinery to Suncor Energy (U.S.A.) Inc. ("Suncor"). Suncor remains a party to the global settlement and has assumed responsibility for implementing certain Consent Decree requirements at the Denver refinery. On July 12, 2006, the United States lodged the Second Amendment to Consent Decree with the Court. Pursuant to 28 C.F.R., Section 50.7, notice of lodging of the Second Amendment to Consent Decree was published in the Federal Register and public comments were solicited. (See Federal Register, Vol. 71, No.143, pp. 42416-42417, July 26, 2006). No comments were received, thus entry of this proposed Amendment is unopposed. Accordingly, the United States respectfully requests that the Court sign and enter this Second Amendment to Consent Decree.

## I. BACKGROUND

ConocoPhillips brought several Consent Decree implementation issues to the attention of the Plaintiffs, as discussed more fully below. Subsequently, the parties entered into negotiations to resolve the issues in a manner that is protective of human health and the environment, achieves the fundamental goals of the original settlement, and avoids litigation. The proposed Second Amendment resolves the following issues that have arisen under the original Consent Decree and First Amendment:

1. Fluidized Catalytic Cracking Unit ("FCCU") Catalyst Additive Programs. The proposed Amendment revises the dates to allow ConocoPhillips a two-year extension for beginning the catalyst additive demonstration at the Billings, Montana, refinery (June 30, 2006). It also extends the period for performance of the catalyst additive demonstrations by three months (15 months to complete) at the Denver, Colorado, Lake Charles, Louisiana, and Billings,

Montana, refineries, which will now conclude no later than December 31, 2006, April 30, 2007 and December 31, 2007, respectively. EPA has learned in implementing the refinery Consent Decrees that by extending the time for the catalyst demonstrations, the refineries are able to test several additives to determine which will achieve the greatest emission reductions at a particular FCCU. Alternatively, in lieu of completing the catalyst demonstrations, the Amendment also allows the Companies to accept short and long-term limits equivalent to best available control technology ("BACT") for sulfur dioxide ("$SO_2$") and nitrogen oxides ("NOx") at any time prior to completion of the respective periods.[1]

Paragraphs 15, 16, and 17 are amended, and new Paragraphs 17A-17E are added to specify that short-term emission limits do not apply during hydrotreater outages, startup, shutdown, and/or malfunction of the FCCU or control system, so long as the refinery takes steps to minimize emissions and adheres to good air pollution control practices. These provisions provide that NOx emissions data during these periods will not be used in determining compliance with short-term emission averages. These provisions are a result of EPA and the States' experiences in implementing the refinery Consent Decrees and are the product of negotiations with settling companies across the industry. The language changes are consistent with recent refinery settlements and are being added as amendments to the pre-2005 refinery Decrees.

---

[1] EPA has determined that the applicable BACT-equivalent short and long-term limits for FCCUs are 25 ppmvd on a 365-day rolling average and 50 ppmvd on a 7-day rolling average for $SO_2$, and for NOx, 20 pmvd on a 365-day rolling average and 40 ppmvd on a 7-day rolling average.

2. <u>Technology Change for FCCUs</u>. The United States, Plaintiff-Intervener Oklahoma and ConocoPhillips have revisited the NOx reduction requirements for the Ponca City No. 5 FCCU. Paragraphs 18 through 23 are amended to substitute installation and optimization of an Enhanced Selective Non-catalytic Reduction ("SNCR") system for the previously required SNCR and a subsequent NOx reducing catalyst additive optimization and demonstration. The parties anticipate that this alternative control option will achieve lower emission levels than the SNCR/catalyst combination.

3. <u>Revision of Carbon Monoxide ("CO") Emission Limits</u>. The Amendment revises the CO emission limit provisions applicable to controlled heaters and boilers at the four refineries to account for "turndown" periods of operation. Turndown operations are defined here as a period when the specific heater or boilers firing rate is less than 30% of the maximum firing rate in MMBtu/hr. The CO limit under normal operation is 0.060 lb/mmBtu, and the relaxed limit during turndown operation is 0.08 lb/mmBtu. This Decree modification recognizes a reduction in CO emissions along with corresponding reductions in firing rate.

Expressly for heaters H-48 and H-6007 at the Ponca City Refinery during period of catalyst regeneration, the CO limit is 400 ppmvd on a 7-day rolling average basis. These units were previously limited to 0.060 lb/mmBtu

4. <u>Deadlines Impacted by Gulf Coast Hurricanes</u>. On October 5, 2005, ConocoPhillips notified the United States and the Plaintiff-Interveners of its claim of *force majeure* pursuant to Paragraph 262 of Consent Decree as a direct result of Hurricanes Katrina and Rita that struck the Gulf Coast on August 29th, and September 24th, 2005. The Plaintiffs did not object to ConocoPhillips's *force majeure* claim and agreed to suspend all deadlines applicable to the Lake

Charles, Louisiana, refinery through November 15, 2005. In addition, the Company requested additional time to meet its overall NOx reduction target for heaters and boilers by two months, until March 1, 2006, due to a delayed turnaround at the Ponca City refinery. The delay at Ponca City was necessitated by the shortage of skilled workers at the Oklahoma refinery, which were diverted to the Gulf Coast for the rebuilding effort. The changes to the applicable deadlines are included in this Second Amendment.

5. <u>Non-Material Changes</u>. The proposed Amendment also includes non-material changes to the Notice and Modification requirements of the Consent Decree, Paragraphs 213 and 214. As we have done with various other refinery Consent Decrees that have been amended for substantive reasons, this Second Amendment also includes additional language to make all Decrees consistent as to deadlines for submission of flaring reports, treatment of start-up, shutdown and malfunction emissions in short-term emission limits, and reduces the general reporting requirements from quarterly to semi-annually. Lastly, changes to Paragraph 301, pertaining to the procedure for future modifications to the Consent Decree, specify that material modifications must be agreed to in writing by the parties and entered by the Court in order to be effective.

These changes will ensure that ConocoPhillip's performance of the settlement requirements continues and that the reduction in harmful air emissions contemplated by the Consent Decree is fully realized.

## II. ARGUMENT

**The Amendment is Fair, Reasonable and Consistent with the Clean Air Act.**

The standard applied by courts in reviewing a settlement is whether the proposed

settlement fairly and reasonably resolves the controversy in a manner consistent with the public interest. Citizens for a Better Environment v. Gorsuch, 718 F.2d 1117, 1126 (D.C. Cir. 1983), cert. denied, 467 U.S. 1219 (1984); United States v. Oregon, 913 F.2d 576, 580 (9th Cir. 1990) (before approving consent decree, district court must be satisfied that Decree is fundamentally fair, adequate and reasonable, and in conformity with applicable laws), cert. denied, 501 U.S. 1250 (1991); United States v. St. Louis Sewer Dist., 952 F.2d 1040, 1044 (8th Cir. 1992); accord United States v. Microsoft Corp., 56 F.3d 1448, 1458 (D.C. Cir. 1995) (standard for review of Sherman Act settlement pursuant to the Tunney Act, 15 U.S.C. § 16(e)); Environmental Technology Council v. EPA, 41 Env. Rep. Cas. 1218, 1220-21 (D.D.C. 1995). In making its determination regarding a proposed settlement, the court should "pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment." SEC v. Randolph, 736 F.2d 525, 529 (9th Cir. 1984).

Approval of a settlement is a judicial act that is committed to the informed discretion of the trial court. Donovan v. Robbins, 752 F.2d 1170, 1176-77 (7th Cir. 1985); United States v. Jones & Laughlin Steel Corp., 804 F.2d 348, 351 (6th Cir. 1986). The Court, however, does not have the power to modify a settlement; it may only accept or reject the terms to which the parties have agreed. United States v. Akzo Coatings of America, 949 F.2d 1409, 1435 (6th Cir. 1991); Officers for Justice v. Civil Service Comm'n, 688 F.2d 615, 630 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983).

In general, public policy strongly favors settlements of disputes without litigation. Donovan v. Robbins, 752 F.2d at 1177; Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1372 (6th Cir.), cert. denied, 429 U.S. 862 (1976). Settlements conserve the resources of the courts, the

litigants, and the taxpayers and "should . . . be upheld whenever equitable and policy considerations so permit." Allied Witan, 531 F.2d at 1372; E.E.O.C. v. Hiram Walker & Sons, Inc., 768 F.2d 884, 888-89 (7th Cir. 1985), cert. denied, 478 U.S. 1004 (1986).

Broad deference should be afforded to EPA's expertise in determining an appropriate settlement and to the voluntary agreement of the parties in proposing the settlement. In re Cuyahoga Equip. Corp., 980 F.2d 110, 118 (2nd Cir. 1992), citing Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837, 842-44 (1984). See also United States v. Vertac Chem. Corp., 756 F. Supp. 1215, 1218-19 (E.D. Ark. 1991), aff'd sub nom. United States v. Hercules, Inc., 961 F.2d 796 (8th Cir. 1992); United States v. Cannons Eng'g, 899 F.2d 79, 87 (1st Cir. 1990).

As demonstrated below, the proposed Second Amendment to Consent Decree meets the three-part test for district court approval: it is fair, reasonable, and in the public interest. Accordingly, the Court should sign and enter the Amendment.

### 1. The Amendment is Procedurally and Substantively Fair.

To determine whether a proposed settlement is procedurally and substantively fair, courts look to factors such as the good-faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in litigation if the settlement is not approved. Hooker Chem. & Plastics Corp., 540 F. Supp. at 1072.

In this case, the settlement embodied in the Amendment is the product of procedural fairness, exemplified by a process that began with EPA's investigation of the petroleum refinery industry, continued with the preparation of EPA's enforcement case against ConocoPhillips, and ended with the development of an injunctive relief program that addresses the violations alleged and furthers the objectives of the laws on which the Complaints were based. The touchstone of

procedural fairness is good-faith, arms-length bargaining among the parties. In order to resolve potential implementation issues arising under the Consent Decree, the parties engaged in vigorous and extensive negotiations. The Amendment reflects the parties' careful and informed assessment of the relative merits of each other's claims while taking into consideration the costs and risks associated with re-opening the Decree. The Amendment also embodies a measure of compromise on both sides, but easily meets the standards for substantive fairness, as required for approval by this Court and conforms with the scope of ConocoPhillips's obligations under the settlement.

As with any fair settlement, the parties gain the benefit of immediate resolution of the litigation and some measure of vindication for their respective positions, while foregoing the opportunity to achieve an unmitigated victory. Hiram Walker & Sons Inc., 768 F.2d. at 889.

In evaluating a settlement under remedial statutes, such as the Clean Air Act, fairness of the proposed Amendment may also be considered in light of its effect on the public. In this instance, many communities located within hundreds of miles of these ConocoPhillips facilities will continue to benefit by installation of additional air pollution controls and improved work practices. The public has a right to expect that health and environmental concerns will be adequately addressed in any settlement under the CAA and that these facilities will comply with all applicable laws. The proposed Amendment meets these ongoing expectations under the settlement, and exceeds both the procedural and the substantive "fairness" standards required for entry. Further, expeditious steps toward compliance will begin immediately, and will not be delayed by litigation of these issues.

### 2. The Amendment is Reasonable.

The "reasonableness" of the Amendment may be determined in light of whether it is technically adequate, fully compensates the public for the alleged violations, and takes into consideration the risks of litigation. U.S. v. Telluride Company, 849 F.Supp. 1400, 1403 (D.Col. 1994). Applying the Telluride standard here, the Court should find that this Amendment represents a reasonable settlement of the implementation issues. As discussed above, the Amendment is more than technically adequate in that it contains specific, tailored relief that addresses the compliance deficiencies alleged in the Plaintiffs' Complaints and accomplishes broad relief in furtherance of the laws upon which the Complaints were based. It obtains this compliance in a far shorter time than if the parties had litigated the implementation disputes.

### 3. The Amendment Is In the Public Interest and Is Consistent with Applicable Environmental Goals.

The Amendment meets the statutory goals of protection of human health and the environment as set forth in the Clean Air Act. One of the primary purposes of the Clean Air Act is to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare. CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1). The role of the Court in reviewing an environmental settlement is to determine "whether the Consent Decree comports with the goals of Congress." Sierra Club v. COCA-COLA Corp., 673 F. Supp. 1555, 1556 (M.D. Fla. 1987). This Amendment with ConocoPhillips furthers the statutory goals of the CAA and thus serves the public interest. The Amendment achieves, without litigation delays or costs, the environmental benefits contemplated by the original Decree.

In summary, the proposed Second Amendment, which affects both ConocoPhillips and

Suncor, accomplishes the following: (1) modifies the FCCU catalyst additive programs at all refineries; (2) establishes interim and final emission limits for FCCUs at the Ponca City, Oklahoma, refinery; (3) allows for alternative technologies for NOx controls on FCCUs; and (4) includes adjusted compliance dates resulting from the impact of Hurricanes Katrina and Rita.

### III. Conclusion

The Second Amendment to Consent Decree presented to this Court for entry is a fair and just resolution to the several implementation issues that have arisen under this complex, multi-statutory, multi-facility settlement. The proposed changes are in the interest of the public, will ensure the continued implementation of the settlement, and further the Company's ongoing compliance with the CAA and applicable state and federal regulations. Entry of the Second Amendment is supported by a long and unbroken line of case law which requires deference to EPA's discretion in interpreting and applying highly technical regulations, and to the sophistication of the parties who negotiated in good faith to achieve an expeditious resolution of these implementation issues. For all the reasons set forth above, this Court should sign and enter the proposed Second Amendment to Consent Decree.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

By: *[signature]*

DIANNE SHAWLEY
Senior Counsel
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-0096